IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-001391-RBJ

DUSTIN KHAFFAJI,

    Plaintiff,

v.

MAKHAIRA GROUP RANGE OPERATIONS, LLC, and
LIBERTY FIREARMS INSTITUTE, LLC,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on defendant Makhaira Group Range Operations, LLC's ("Makhaira") and defendant Liberty Firearms Institute, LLC's ("Liberty") motions for summary judgment. ECF Nos. 40, 41. For the reasons stated herein, both motions are GRANTED.

## I. BACKGROUND

**A. Factual Background.**

This is a case about alleged employment discrimination. Defendant Liberty owns a gun store and range in Johnstown, Colorado. ECF No. 41 at 1. Liberty contracts with defendant Makhaira to run its shooting ranges. *Id.* Plaintiff Dustin Khaffaji is a Marine Veteran and a medically retired Federal Law Enforcement Officer who applied for a job with Makhaira. ECF No. 1 at 3. He interviewed for the role of Range Safety Officer on April 12, 2016 with the President of Makhaira, Mark Hotaling. *Id.* During the interview, Mr. Khaffaji discussed the fact

that he had a disability, although Mr. Hotaling did not ask what his disability was.[1]  ECF No. 40-6 at 3.  Mr. Khaffaji also revealed that he had been arrested for driving under the influence (DUI) in the past but the charges had been dropped.  ECF No. 40-7 at 3.  Mr. Khaffaji did not recall whether he also revealed that he had a reckless driving charge on his record.  *Id.* at 5.  Mr. Khaffaji was hired by Makhaira on April 16, 2016 to work as a Range Safety Officer at the Liberty shooting range.  *Id.*

Mr. Khaffaji attended a classroom training for his new job on April 19, 2016.  *Id.*  At that training he again told Mr. Hotaling about the dismissed charges on his record because they were affecting his ability to obtain a concealed gun permit.  ECF No. 40-7 at 9.  He explained that he had a DUI incident on his record that they had previously discussed which had been dismissed, and that he was charged in 2009 with possession of a handgun while under the influence which had been pled down to a noise disturbance.  ECF No. 40-7 at 11.  Mr. Hotaling stated that he understood Mr. Khaffaji to be discussing only a single incident in 2009, and Mr. Hotaling told Mr. Khaffaji that he was not automatically disqualified but that Makhaira would need to see what the background check showed.  ECF No. 40-4 at 2; ECF No. 40-6 at 5.

At the April 19 meeting Mr. Khaffaji also disclosed that his disability was PTSD.  ECF No. 42-1 at 10; ECF No. 40-6 at 10.  Mr. Hotaling, who is a retired Navy SEAL and counsels individuals with PTSD, offered to be available to talk to Mr. Khaffaji about his PTSD.  ECF No. 42-1 at 10.

On April 25, 2016 Mr. Khaffaji attended another training for his new job.  At that training, two of Liberty's employees, Frank Schmeeckle and Heather Rubel, were introduced to the new hires.  ECF No. 41-6 at 1.  Also at that training, Mr. Khaffaji and the other new hires

---

[1] Mr. Khaffaji's recollection is that he revealed at the initial interview that he had PTSD. ECF No. 40-7 at 7.

filled out a background check.  *Id.*  The background checks were run by a Liberty employee, Cami Walker (nee Robertson).  ECF Nos. 41-4, 41-5.  After the results came back at the end of the night, Ms. Walker handed Mr. Hotaling the results of the background checks.  ECF No. 41-1 at 6.

Mr. Khaffaji's background check revealed that he had two alcohol-related incidents on his record.  ECF No. 40-3.  In 2014 he was charged with reckless driving and driving under the influence.  *Id.* at 2–3.  He pled guilty to reckless driving but the charge of driving under the influence was dismissed.  *Id.*  In 2009 he was charged with disorderly conduct, to which he pled guilty, and the prohibited use of a weapon when drunk.  *Id.* at 2–4.  Although Mr. Khaffaji claims that he had previously disclosed both the 2009 and 2014 incidents to Mr. Hotaling, Mr. Hotaling avers that he had misunderstood and had believed that Mr. Khaffaji only had a 2009 incident on his record until he saw the results of the background check.  ECF No. 40 at 4–5; ECF No. 40-4 at 2.

The next day, April 26, 2016, Mr. Hotaling met briefly with Heather Rubel and Grant Schmeeckle of Liberty.  ECF No. 41-3 at 6–7.  He indicated that a few of his new hires' background checks had been marked "review," but he did not disclose which individuals' checks were at issue or what the charges were.  *Id.* at 8.  Instead he asked what Liberty's criteria were for disqualifying individuals from shooting at the range.  *Id.* at 6–7.  Ms. Rubel and Mr. Schmeeckle indicated that if an individual had been prohibited from possessing or purchasing a weapon he or she would not be allowed to shoot at the range.  *Id.*  Mr. Hotaling also asked how the range would treat alcohol incidents, and Ms. Rubel and Mr. Schmeeckle indicated that the decision was within Makhaira's discretion.  ECF No. 41-6 at 2.

Also on April 26, Mr. Hotaling called his co-owners of Makhaira to discuss Mr. Khaffaji's employment. ECF No. 40-4 at 2; ECF No. 40-6 at 14–16. In that conversation the owners of Makhaira decided to terminate Mr. Khaffaji. ECF No. 40-6 at 16. Later that same day, Mr. Hotaling called Mr. Khaffaji and informed him that he was being terminated. ECF No. 40-6 at 17. Although Mr. Hotaling alleges that he had planned to offer Mr. Khaffaji an alternative position where he would not be carrying a gun, Mr. Khaffaji allegedly became very angry over the phone, and Mr. Hotaling did not make the offer.[2] *Id.* at 18. The next morning, April 27 2016, Mr. Hotaling called Ms. Rubel and Mr. Schmeeckle at Liberty to inform them that he had fired Mr. Khaffaji, which was the first time either Ms. Rubel or Mr. Schmeeckle learned that he had been employed by Makhaira. *Id.* at 13; ECF No. 41-6 at 2. .

At this point, the plot thickens. As it turns out, Ms. Rubel had a long and rocky past with Mr. Khaffaji's wife stemming from a fourth grade falling out. ECF No. 41-6 at 3. Afraid that Mrs. Khaffaji would think that Ms. Rubel was to blame for her husband's losing his job, Ms. Rubel reached out to a mutual friend, Jessica Gordon, hoping that she would act as the go-between to exonerate Ms. Rubel in Mrs. Khaffaji's eyes. *Id.* After meeting with Ms. Rubel, Ms. Gordon conveyed via text to Mrs. Khaffaji that "[t]he fact that he has 2 DUIs is a liability for their insurance I guess." ECF No. 42-8 at 4. Ms. Gordon assured Mrs. Khaffaji that she did not tell Ms. Rubel about Mr. Khaffaji's PTSD, but that "[t]he mark guy told her about it." *Id.* at 3. Ms. Gordon also stated that "[t]he ptsd and the dui is just not a good combo for the job." *Id.* When Mrs. Khaffaji asked whether those were Ms. Rubel's words, Ms. Gordon responded that "[s]he said that they said that about it," and that "[s]he said that the dui is a liability issue for the insurance." *Id.* at 5.

---

[2] Mr. Khaffaji testified that Mr. Hotaling did, in fact, offer him an alternative role. ECF No. 43-1 at 6.

On May 1, 2016 Ms. Gordon signed a "sworn statement" drafted by Mrs. Khaffaji that summarized Ms. Gordon's meeting with Ms. Rubel, stating in part that Ms. Rubel "said that she and a co-worker named Mark had discussed Dustin's background and PTSD." ECF No. 42-7 at 2. According to this statement, "She said Mark offered PTSD counseling to Dustin and that when it came down to it, 'PTSD and DUI is a liability issue with insurance.'" *Id.* Ms. Gordon avers that she was drunk when she signed this statement, and that she had only signed it to protect Ms. Rubel from a lawsuit. ECF No. 41-7 at 11, 13. Moreover, she claims that she tried to "reject" and retract the statement. ECF No. 42-12 at 4. Nonetheless, she maintains that the statement is "not false." *Id.* In her deposition, Ms. Gordon averred three times that Ms. Rubel "did not say PTSD," ECF No. 41-7 at 4, 18, 19 ("she never said that statement") but in the same deposition she also testified that Ms. Rubel said that PTSD and DUI were a liability issue. *Id.* at 20.

Ms. Rubel states that she never mentioned PTSD as a liability or as a reason for Mr. Khaffaji's termination. ECF No. 41-6 at 3; ECF No. 42-10 at 2. She also states that she was aware of Mr. Khaffaji's PTSD before April 2016 because Ms. Gordon had hold her about it, and that she had never discussed his PTSD with Mr. Hotaling. ECF No. 41-6 at 3.

### B. **Procedural Background.**

Mr. Khaffaji filed his complaint before this Court asserting two claims against both Makhaira and Liberty: (1) Disability Discrimination under the Americans with Disabilities Act (ADA) and the ADA Amendments Act (ADAAA), (2) Disability Discrimination under section 12112 of the ADA. ECF No. 1 at 5–7. Mr. Khaffaji brought a third claim of interference with contractual relations against Liberty only. *Id.* at 7–8. In my order on Liberty's motion to dismiss

the complaint, I dismissed the first two claims with respect to Liberty. ECF No. 23. As a result, the first two claims apply only to Makhaira at this point.

Makhaira filed its motion for summary judgment with respect to Mr. Khaffaji's two claims against it, and Liberty filed a motion for summary judgment with respect to Mr. Khaffaji's third claim. ECF Nos. 40, 41. These motions have been briefed. ECF Nos. 42–45.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing An*derson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

### A. Makhaira's Motion for Summary Judgment [ECF No. 40].

Mr. Khaffaji raises two claims against Makhaira: (1) that Makhaira discriminated against him on the basis of a qualifying disability and failed to accommodate his disability, thereby violating Title VII, the ADA, or the ADAAA; and (2) that Makhaira perceived him as having a

qualifying disability and failed to provide a temporary accommodation to him, thereby discriminating against him on the basis of his disability in violation of section 12112 of the ADA. ECF No. 1 at 5–7. Makhaira moves for summary judgment on both claims.

Both of Mr. Khaffaji's claims are based on the ADA, which prohibits employment discrimination against individuals with disabilities, where a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. §§ 12112(a), 12101(1)(A)–(C).

1. "Failure to Accommodate" Claim.

An ADA claim brought under a "failure to accommodate" theory relies on the fact that "Congress has already determined that a failure to offer a reasonable accommodation to an otherwise qualified disabled employee *is* unlawful discrimination." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 n.12 (10th Cir. 1999). Makhaira points out that it is not clear whether Mr. Khaffaji's first claim raises both a traditional ADA discrimination claim and a failure-to-accommodate claim, or if this is a single claim. ECF No. 40 at 7. I agree that the complaint is not entirely clear, but I find that the most reasonable interpretation is that this claim asserts a single violation of the ADA, Title VII, or the ADAAA stemming from a failure to accommodate Mr. Khaffaji's disability. *See* ECF No. 1 at 6; *see also* ECF No. 43 (in his response to the motion for summary judgment, Mr. Khaffaji exclusively discusses his "regarded-as" ADA claim, indicating that he did not intend to assert an independent "traditional" ADA claim).

Therefore, because I agree with Makhaira that Mr. Khaffaji failed to respond to any of Makhaira's arguments with respect to the failure-to-accommodate claim, I find that Mr. Khaffaji has effectively abandoned this first claim. ECF No. 45 at 2. Moreover, even if he had not

abandoned this claim, there is no support in the record for a failure-to-accommodate claim, since there is no evidence that Mr. Khaffaji requested an accommodation in the first place. ECF No. 40-4 at 2. "The employer must of course know of the employee's disability and of the accommodation the employee wishes to receive in order to have any responsibility for providing such an accommodation." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017). Makhaira cannot be found liable for failing to provide an accommodation that was never requested. Makhaira's motion for summary judgment is therefore granted with respect to Mr. Khaffaji's first claim alleging a failure to accommodate.

   2. "Regarded-as" Claim.

Mr. Khaffaji's second claim asserts that Makhaira violated section 12112 of the ADA when it perceived that Mr. Khaffaji had a qualifying disability of PTSD and discriminated against him on those grounds. ECF No. 1 at 6–7. Section 12112 prohibits discrimination on the basis of disability in respect to employment. 42 U.S.C. § 12112. Mr. Khaffaji claims that he was discriminated against because Makhaira regarded him "as if he has a substantially limiting impairment." ECF No. 43 at 8. This type of claim is also referred to as a "regarded-as" ADA claim because it relies on the employers' perception of a disability rather than the actual existence of a disability. *See* 42 U.S.C. § 12101(1)(C) (defining "disability" in part as "being regarded as having such an impairment"). This definition of disability recognizes "that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *Equal Emp't Opportunity Comm'n v. BNSF Ry. Co.*, 853 F.3d 1150, 1155 (10th Cir. 2017) (internal quotation marks and citation omitted).

"Where, as in this case, the plaintiff contends that his employer regarded him as disabled, he must show that he has an impairment that 'does not substantially limit major life activities but

8

is treated by a covered entity as constituting such limitation.'" *Dillon v. Mountain Coal Co., L.L.C.*, 569 F.3d 1215, 1218 (10th Cir. 2009) (quoting 29 C.F.R. § 1630.2(*l*)(1)). Moreover, in a regarded-as suit, "'a plaintiff must show that an employer has mistaken beliefs about the plaintiff's abilities: the employer 'must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'" *Id.* (quoting *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1190 (10th Cir. 2007)). In this case, Mr. Khaffaji has not presented any evidence about Makhaira's belief about his PTSD and its effect on him, let alone that Makhaira believed that his PTSD would substantially limit his major life activities.

Mr. Khaffaji asserts that there is a material issue in dispute with respect to whether Makhaira erroneously perceived that he was suffering from PTSD and alcohol addiction and thereby found that he was a liability and unable to perform his duties. ECF No. 43 at 10. Mr. Khaffaji's argument on this point is somewhat unclear: he appears to be positing both that Makhaira erroneously perceived that he suffered from an independent alcohol addiction and that Makhaira erroneously perceived that he abused alcohol as a result of his PTSD. *Id.* at 10–11; *see also id.* at 8 (Mr. Khaffaji claims that Makhaira "erroneously believed he abused alcohol because he suffered from PTSD"). If Mr. Khaffaji is asserting that Makhaira improperly considered alcohol addiction as an independent ailment, not only is there no evidence to that effect, but it is also improper to raise this allegation for the first time in his response to the motion for summary judgment. *See Borum v. Coffeyville State Bank*, 6 F. App'x 709, 712 (10th Cir. 2001) (confirming the district court's decision not to consider claims that were not raised in the complaint). Therefore, I will not consider this allegation in assessing Makhaira's motion for summary judgment or Mr. Khaffaji's response.

If, on the other hand, Mr. Khaffaji is contending that Makhaira's "mistaken belief" was that he suffered from alcohol abuse as a result of his PTSD, this contention was similarly raised in the response to the motion for summary judgment for the first time, and it is unsupported by the record. The only discussion of any link between alcohol use and PTSD occurred in Mr. Hotaling's deposition, in which Mr. Khaffaji's attorney asked whether there is "a correlation between the PTSD and the alleged alcohol abuse that you determined Mr. Khaffaji had." ECF No. 45-1 at 2. Mr. Hotaling testified first that he had not determined that Mr. Khaffaji abuses alcohol. *Id.* Second, he stated unequivocally that "no; PTSD and alcohol, they are not intrinsically linked." *Id.* Despite Mr. Khaffaji's attorney's attempts to create a link between PTSD and alcohol abuse, Mr. Hotaling was steadfast in his explanation that "not everybody who has PTSD abuses alcohol" and "[n]ot everyone convicted of alcohol offenses has PTSD. I mean, they are exclusive." *Id.* I am not impressed by Mr. Khaffaji's attempt to imply that Makhaira's decision to terminate his employment was tied in this tenuous way to his PTSD simply because Makhaira was concerned about two recent alcohol-related incidents on his background check. Because there is no evidence that Makhaira believed that Mr. Khaffaji's PTSD caused his alcohol-related incidents, Mr. Khaffaji has failed to demonstrate that Makhaira had mistaken beliefs about his abilities based on an erroneous perception about his PTSD.

Moreover, to the extent that Mr. Khaffaji is claiming more generally that Makhaira perceived his PTSD as a substantially limiting impairment outside of the context of alcohol abuse, there is no evidence that anyone at Makhaira held such a view. Mr. Hotaling, himself a service-related disabled veteran and a former Navy SEAL and someone who counsels veterans with PTSD, does not even view PTSD as a disorder. ECF No. 40-4 at 1. In his deposition he referred to it simply as "PTS," explaining that "in the community, we don't consider it a

disorder. . . . [I]t's a happening. It's not a disorder." ECF No. 45-1 at 7–8. Moreover, he argued that there should not be a stigma attached to individuals with PTSD, and he testified that he has no concern about employees with PTSD, since "plenty of folks with PTS function just fine in society and deal with what's in their head in a private way." *Id.* at 9. Mr. Hotaling testified that he does not know definitively whether he has other employees with PTSD, but also testified that "we do have some" based on what Makhaira's previous operations manager had told him. ECF No. 40-6 at 8. Thus, whether an employee has PTSD or not simply does not appear to be a factor taken into account by Makhaira. Mr. Khaffaji fails to present any evidence to the contrary indicating that Mr. Hotaling or anyone at Makhaira viewed PTSD as a limiting impairment.

Additionally, Makhaira's treatment of Mr. Khaffaji reveals that PTSD did not affect its decision to hire him. Mr. Hotaling was aware that Mr. Khaffaji had a disability from Mr. Khaffaji's first email expressing interest in a job with Makhaira. ECF No. 42-3. The topic came up again in Mr. Khaffaji's interview on April 12, 2016. ECF No. 40-4 at 2. Mr. Khaffaji did not request an accommodation for his disability and indicated that he could perform the job. ECF No. 40-6 at 3. Mr. Hotaling hired Mr. Khaffaji despite his disability, and when Mr. Hotaling learned on April 19 that Mr. Khaffaji's disability was PTSD, he offered to counsel Mr. Khaffaji. ECF No. 42-1 at 10. Mr. Khaffaji stated himself that Mr. Hotaling did not seem to be the type to hold PTSD against him. ECF No. 40-7 at 14. Moreover, Makhaira stated in its response to Mr. Khaffaji's Request for Admission that it made no decision about Mr. Khaffaji "based in any way, in whole or in part, on Plaintiff's assertion that he had PTSD." ECF No. 43-14 at 8. Makhaira also stated that it never discussed or considered Mr. Khaffaji's assertion that he has PTSD. *Id.* Instead, the record reflects that Mr. Khaffaji was only terminated after his background check

revealed two alcohol-related incidents in recent years, one of which Mr. Hotaling had not previously been aware of. ECF No. 42-1 at 15.

Mr. Khaffaji's additional support for his discrimination claim is that there were two other employees with background check issues who were not terminated, so he contends the only difference that accounts for his disparate treatment is his PTSD. ECF No. 43 at 16. Not so. The two alcohol-related incidents in L.S.'s background check were older than Mr. Khaffaji's. L.S.'s report reveals a charge of DUI from 2008, and a charge of driving while ability impaired in 2000. ECF No. 43-12 at 6–7. Both charges are older than Mr. Khaffaji's alcohol-related charges in 2009 and 2014. Mr. Hotaling testified that he and his co-owners had discussed L.S.'s two alcohol-related charges and decided to hire him, but Mr. Hotaling noted that the charges against L.S. were sixteen years and six and a half years before the decision was made. ECF No. 45-1 at 5.

The other individual with alcohol-related charges who was hired, K.M., did not have any criminal charges in Colorado, but instead only had a criminal charge from Illinois. ECF No. 43-13. Mr. Khaffaji himself acknowledged that "[t]he background checks conducted for [Makhaira] are only for occurrences that happen in the State [of] Colorado." ECF No. 43. Though Mr. Khaffaji might disagree with this policy, it does not reveal any unfairness or disparate treatment of his case, but instead reveals a non-biased reason that Mr. Khaffaji's background check provided a basis for terminating his employment that did not apply in K.M.'s case. As such, Makhaira's decision not to terminate L.S. or K.M. does not reveal that Makhaira treated Mr. Khaffaji differently due to PTSD, but instead that he was treated differently because his background check was believed to be more problematic.

12

Finally, Mr. Khaffaji supports his claim of discrimination in part on the fact that Ms. Rubel allegedly told Ms. Gordon that Mr. Hotaling told her that the "PTSD and DUI were a liability issue with insurance." ECF No. 43-4 at 2. This statement is hearsay since Mr. Khaffaji is introducing it to prove the truth of the matter asserted: that Mr. Hotaling considered both his alcohol-related incidents and his PTSD in deciding to terminate his employment. *See* ECF No. 43 at 10 ("Defendant's perception of PTSD and alcohol, although completely erroneous as to Khaffaji, led [Makhaira] to terminate Khaffaji.") (citing Ms. Gordon's sworn statement at ECF No. 43-4). Hearsay is inadmissible at the summary judgment stage. *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) ("'A third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'") (internal citation omitted). Moreover, I agree with Makhaira that this statement cannot be introduced as an admission of a party-opponent such that it would not be considered hearsay since the statement at issue was made by Ms. Rubel (on behalf of Liberty, whose liability is not at issue in this claim) rather than by Mr. Hotaling (on behalf of Makhaira). ECF No. 40 at 17 n.8; *see also* Fed. R. Evid. 801(d)(2). Similarly, even if the purported statement by Mr. Hotaling were considered a statement against interest (insofar as it would indicate that he took into account Mr. Khaffaji's disability in deciding to terminate his employment), there is no hearsay exception that applies to Ms. Rubel's statement conveying Mr. Hotaling's purported statement. As such, because Mr. Hotaling's statement is hearsay within hearsay, and there is not an exception applying to both statements, the overall statement would still be excluded. *See* Fed. R. Evid. 805.

Thus, because Mr. Khaffaji has failed to establish a genuine issue of material fact with respect to whether Makhaira believed that Mr. Khaffaji had a substantially limiting impairment

caused by his PTSD, Makhaira's motion for summary judgment on Mr. Khaffaji's "regarded-as" ADA claim is GRANTED.

**B. Liberty's Motion for Summary Judgment [ECF No. 41].**

Liberty moves for summary judgment with respect to Mr. Khaffaji's claim of intentional interference with contract. ECF No. 41. Mr. Khaffaji's complaint alleges that Liberty knew or should have known that he was employed by Makhaira and intentionally caused Makhaira to terminate his employment, thereby improperly interfering with Mr. Khaffaji's contract with Makhaira. ECF No. 1 at 7–8. Liberty counters that it had no knowledge of Mr. Khaffaji's employment with Makhaira until after his employment had ended and that it did not interfere with Mr. Khaffaji's employment. ECF No. 41 at 5. I agree.

A claim for tortious interference with contract has five elements under Colorado law: "(1) existence of a contract between the plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) the defendant's intentional, improper interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1120 (D. Colo. 2016) (citing *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 170 (Colo. 1993)). Curiously in this case, the first element is not in dispute: Liberty seems to concede that there was a contractual relationship between the parties, and instead Liberty disputes only that it was aware of such a relationship or that it interfered with such a relationship. I note, however, that Mr. Khaffaji was an at-will employee and there is no evidence that he had an employment contract with Makhaira. *See* ECF No. 42-5 at 22 ("Like many companies, [Makhaira] does not offer individual employees a formal employment contract. Employment is 'at will,' meaning that you or [Makhaira] may end your employment at any time for any lawful reason."). Without a

contract, a plaintiff cannot satisfy the first prong of his intentional interference with contract claim and this claim must fail.[3] *See Thornton v. Kaplan*, 937 F. Supp. 1441, 1458 (D. Colo. 1996).

Nonetheless, because the parties have assumed there was a contractual relationship, I will explain why, even if the first element were met, Mr. Khaffaji has failed to satisfy the remainder of the required elements for his claim of intentional interference with contract. With respect to the second element, Liberty contends that it had no knowledge of Mr. Khaffaji's employment with Makhaira until after he had been terminated. ECF No. 41 at 5. Mr. Khaffaji counters that Liberty's knowledge of his employment can be inferred from the fact that Liberty knew Makhaira was hiring employees to operate the shooting range, and that Ms. Rubel and Mr. Schmeekle were introduced to those employees at the Makhaira training. ECF No. 42 at 9.

I agree with Liberty that there is no evidence that it had actual knowledge of Mr. Khaffaji's employment with Makhaira. However, "actual knowledge is not required to prove intentional interference with contract." *Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.*, 831 P.2d 908, 912 (Colo. Ct. App. 1991). Instead, a plaintiff need only show that the defendant "'had knowledge of facts which would lead him to inquire as to the existence of the contract.'" *Id.* (internal citation omitted). Thus, interpreting the facts in the non-moving party's favor, I will assume that Liberty had knowledge of facts that might have led it to inquire as to the existence of

---

[3] Given the language in the Liberty Employment Manual, ECF No. 42-5 at 22, one can assume that even if Mr. Khaffaji did have an employment contract that he failed to provide in the record, it would be an at-will employment contract. Such contracts are subject to a higher standard for proving intentional interference with a contract: Mr. Khaffaji would be required to show that Liberty used "wrongful means, such as physical violence, fraud, civil suit, or criminal prosecution" to interfere with the contract. *Corry v. Analysts Int'l. Corp.*, 215 F.3d 1336 (Table), 2000 WL 725476, at *3 (10th Cir. 2000) (unpublished) (internal citation and quotation marks omitted). Mr. Khaffaji has not even addressed these heightened standards, let alone provided evidence to satisfy them.

a contract, including that Makhaira was hiring various Range Safety Officers at that time. As such, I will assume for the sake of this motion that Mr. Khaffaji has met the second prong.

Regardless, Mr. Khaffaji has not demonstrated the existence of a genuine issue of material fact with respect to the third element: whether Liberty intentionally and improperly interfered with Mr. Khaffaji's contract with Makhaira. Mr. Khaffaji's theory of how Liberty interfered with his contract hinges on a meeting between Mr. Hotaling of Makhaira and Ms. Rubel and Grant Schmeekle of Liberty on April 26, 2016. ECF No. 42 at 11. Mr. Khaffaji claims that at this meeting Mr. Hotaling on behalf of Makhaira "sought the approval of [Liberty] to keep certain employees, including Khaffaji." *Id.* Mr. Khaffaji contends that "no decision was made to terminate Khaffaji *until* Hotaling spoke with Rubel and Grant Schmeeckle," and that as such, "[i]t can be inferred that [Liberty] made the decision in regards to Khaffaji's employment." *Id.* (emphases in original). Finally, Mr. Khaffaji also claims—relying on Ms. Gordon's accounting—that at this meeting "[i]t was concluded that DUI and PTSD was a liability." *Id.* Mr. Khaffaji's accounting of the meeting and the inferences that can be drawn therefrom find no support in the record.

Instead, the record reflects that though Mr. Hotaling met with Ms. Rubel and Mr. Schmeeckle after conducting the background checks and before making the decision to terminate Mr. Khaffaji, neither Ms. Rubel nor Mr. Schmeeckle was aware that Mr. Hotaling was considering whether to terminate Mr. Khaffaji, and as such they could not have knowingly interfered with his contract. Every accounting of this meeting indicates that Mr. Hotaling was only seeking information about Liberty's policies with respect to disqualifying individuals from shooting at the range. *See* ECF No. 41-1 at 5 (Mr. Schmeeckle testifying that Mr. Hotaling asked what disqualifies a person from shooting); ECF No. 41-3 at 6–8, 12–13 (Mr. Hotaling

16

testifying that he asked what Liberty's criteria were for disqualifying someone from shooting at the range and asking about alcohol incidents); ECF No. 41-6 (Ms. Rubel's declaration that Mr. Hotaling asked what would disqualify a person from shooting and whether alcohol incidents would be disqualifying, and that he mentioned that he had several background checks marked for review but did not say whose). Without naming individuals or identifying any underlying charges, Mr. Hotaling indicated that three background checks had been flagged "for review," so he wanted to know what criteria Liberty would use to disqualify shooters, and therefore, presumably, what criteria Makhaira should use to disqualify its shooting range employees. Mr. Hotaling also asked about how Liberty would view alcohol incidents. *Id.* at 13. Ms. Rubel and Mr. Schmeekle told Mr. Hotaling that a person would not be allowed to shoot if he or she were not able to purchase or possess a firearm. ECF No. 41-3 at 7. Beyond that, Ms. Rubel and Mr. Schmeekle told Mr. Hotaling that he had discretion to make the decision with respect to alcohol incidents. The parties all emphasized that this meeting took place soon after Liberty had opened, so the policies on such issues were not yet solidified.

There is simply no evidence that either Ms. Rubel or Mr. Schmeekle interfered with Mr. Khaffaji's employment with Mr. Hotaling. Even if one were to assume that they knew that Mr. Khaffaji was one of the employees whose background checks had been marked for review—an assumption for which there is no evidence—Ms. Rubel's and Mr. Schmeeckle's advice to Mr. Hotaling would not have resulted in his being fired. As noted, they told Mr. Hotaling that a person who could not possess or purchase a firearm would not be allowed to shoot at the range, but that category did not include Mr. Khaffaji, who was allowed to both purchase and possess firearms. ECF No. 41-3 at 7. Moreover, with respect to alcohol-related incidents, they told Mr. Hotaling that the decision was in his discretion. ECF No. 41-1 at 5. There is therefore no

17

evidence that Liberty's answers could be used to disqualify Mr. Khaffaji. Instead, the evidence from this meeting supports Mr. Hotaling's testimony that nothing in the discussion with Ms. Rubel and Mr. Schmeekle caused him to terminate Mr. Khaffaji, but that instead he made the decision with his two fellow Makhaira owners. *Id.* at 12.

Mr. Khaffaji attempts to insert some doubt as to whether Liberty was involved in the decision by contending that Ms. Rubel might have conducted Mr. Khaffaji's background check. ECF No. 42 at 3–5, 15. From this claim Mr. Khaffaji implies that Liberty was aware of the charges therein and thus is culpable for the decision to terminate him. *Id.* As an initial matter, however, the record largely supports a finding that Ms. Rubel did *not* conduct the background checks with respect to Mr. Khaffaji or the other candidates for employment with Makhaira. *See* ECF No. 41-5 (Mr. Khaffaji's background screening report indicates that it was requested by Cami Robertson (now Walker)); ECF No. 41-1 at 6 (Mr. Schmeeckle testified that Cami Walker conducted the background checks and hand-delivered them to Mr. Hotaling); ECF No. 41-4 (Declaration of Cami Walker stating that she ran the background checks for Makhaira in April 2016); ECF No. 41-6 at 2 (Declaration of Ms. Rubel stating that she has never reviewed background checks for Makhaira's employees or for Mr. Khaffaji).

The only evidence suggesting that Ms. Rubel might have been involved in the background checks is Mr. Hotaling's deposition testimony that either Cami Walker or Ms. Rubel handed him the background checks, ECF No. 41-3 at 11, and Ms. Gordon's testimony and statement that Ms. Rubel had told her that "one of the background checks she had run was 'someone she knew of.'" ECF No. 42-7. Because Ms. Gordon's statement on this topic is introduced to prove the truth of the matter asserted, this statement is hearsay. *See* Fed. R. Evid. 801 (c) (defining hearsay as "a statement, other than one made by the declarant while testifying

18

at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). As noted, the Court cannot consider hearsay evidence in ruling on a motion for summary judgment. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995). As such, Ms. Gordon's statement that Ms. Rubel conducted the background check is not only contradicted by Ms. Rubel's own statement and the remainder of the record, but is inadmissible, and it therefore does not support the existence of a genuine issue of fact with respect to whether Ms. Rubel conducted the background checks.

However, even assuming that Ms. Rubel had conducted Mr. Khaffaji's background check and that she was personally aware of the charges uncovered therein, that fact would not indicate that Liberty had interfered with Mr. Khaffaji's employment. As the above description of the meeting between Mr. Hotaling and Ms. Rubel and Mr. Schmeeckle reveals, there is no evidence that Ms. Rubel influenced Mr. Hotaling's decision to terminate Mr. Khaffaji. Instead, as noted, the parties did not discuss Mr. Khaffaji in particular, and Ms. Rubel and Mr. Schmeeckle did not opine that Mr. Hotaling should make any particular decision with respect to the employees whose background checks were flagged, but instead emphasized that the decision was within Mr. Hotaling's discretion.

Mr. Khaffaji's additional support for his argument similarly fails to defeat summary judgment. He relies on another statement from Ms. Gordon that Ms. Rubel allegedly told her after Mr. Khaffaji had been terminated that "PTSD and DUI is a liability issue with insurance." ECF No. 42 at 15. Again, this statement is hearsay, and it only conveys Ms. Rubel's understanding of Makhaira's decision, not that Ms. Rubel made or influenced the decision. Mr. Khaffaji also indicates that because Liberty pays Makhaira for its services, Liberty might have improperly applied economic pressure on Makhaira to terminate Mr. Khaffaji. ECF No. 42 at

14. There is simply no evidence of economic pressure in the record nor any plausible reason that Liberty would pressure Makhaira to make such a decision.

In sum, I agree with Liberty that Mr. Khaffaji's contention that Liberty interfered with Makhaira's employment decision is based solely on inference with no supporting evidence in the record. ECF No. 44 at 4. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Because Mr. Khaffaji's theory that Liberty interfered is based on pure speculation, it is insufficient to defeat summary judgment.

Thus, because (1) there is no contract and (2) there is no evidence that Ms. Rubel, Mr. Schmeekle, or anyone else at Liberty made the decision or influenced Mr. Hotaling's decision to terminate Mr. Khaffaji, Mr. Khaffaji's claim for intentional interference with contract must fail. Liberty's motion for summary judgment is thus GRANTED.

## ORDER

For the reasons stated herein, both Makhaira's [ECF No. 40] and Liberty's [ECF No. 41] motions for summary judgment are GRANTED.

DATED this 10th day of July, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge